IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| GOODWILL INDUSTRIES INTERNATIONAL, INC., GOODWILL INDUSTRIES OF THE COASTAL EMPIRE, INC., and GOODWILL OF THE COASTAL EMPIRE, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> ROBERT J. WOODWORTH, JR., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CV 414-150

CIVIL ACTION NO. _____

## COMPLAINT FOR TRADEMARK INFRINGEMENT AND DECEPTIVE TRADE PRACTICES

COME NOW GOODWILL INDUSTRIES INTERNATIONAL, INC., GOODWILL INDUSTRIES OF THE COASTAL EMPIRE, INC., and GOODWILL OF THE COASTAL EMPIRE, INC. ("Plaintiffs" or "Goodwill"), as Plaintiffs herein, and for their Complaint for Trademark Infringement and Deceptive Trade Practices against ROBERT J. WOODWORTH, JR., Defendant herein, respectfully plead, aver and state as follows:

### IDENTIFICATION OF THE PARTIES

1.

Plaintiff **GOODWILL INDUSTRIES INTERNATIONAL, INC.** ("GII") is a not-for-profit corporation organized under the laws of Massachusetts. Plaintiff GII has a principal office and place of doing business at 9200 Rockville Pike, Bethesda, Maryland.

2.

Plaintiff **GOODWILL INDUSTRIES OF THE COASTAL EMPIRE, INC.** ("GICE") is a non-profit corporation organized under the laws of Georgia.  Plaintiff **GOODWILL OF THE COASTAL EMPIRE, INC.** ("GCE") is a non-profit corporation organized under the laws of Georgia.  Plaintiffs GICE and GCE each have a principal office and place of doing business at 7220 Sallie Mood Drive, Savannah, Georgia.  Plaintiffs GICE and GCE are collectively referred to herein as "Goodwill Savannah."

3.

Upon information and belief, Defendant **ROBERT J. WOODWORTH, JR.** ("Defendant") is an individual residing at 2200 Forest Lakes Blvd., Charleston, South Carolina 29414.

### NATURE OF THE ACTION

4.

This is an action for trademark infringement and deceptive trade practices.  Plaintiffs allege herein that Defendant knowingly used in commerce, and continued to use in commerce, Plaintiffs' valid, protectable, registered trademarks in a manner that is likely to cause confusion, or to cause mistake or to deceive, including by causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services and likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another.

### JURISDICTION AND VENUE

5.

Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1332(a) (diversity of citizenship between the parties), and § 1338(a) (actions arising under an Act of Congress relating to

trademarks and claims of unfair competition when joined with a substantial and related claim under the trademark laws).

6.

This Court has personal jurisdiction over the Defendant because, upon information and belief, Defendant has transacted business within the State of Georgia related to the claims alleged in this Complaint and committed the tortious acts described herein within the State of Georgia.

7.

Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this action occurred within this District.

**GOODWILL'S SERVICES AND ITS REGISTERED TRADEMARKS**

8.

Plaintiff GII is a nonprofit organization that was founded in Boston, Massachusetts in 1902. For more than one hundred years, Goodwill has provided job training and other services designed to help those in need find employment and develop useful and necessary skills. Goodwill accepts donations of new and used goods and sells such donated goods in its retail stores to fund its training programs. Goodwill's job-training, donation collection and retail services are referred to herein as the "Goodwill Services".

9.

GII owns numerous federal trademark registrations, including the following (collectively, the "GII MARKS"):

| Mark | Registration No. | First Use Date | Registration Date | Goods/Services IC |
|------|------------------|----------------|-------------------|-------------------|
| GOODWILL and Design | 2,811,695 | 1/23/1967 | 2/3/2004 | IC 035: Retail Store Services Featuring A Variety Of Goods Of Others |

| GOODWILL INDUSTRIES INTERNATIONAL, INC. and Design | 3,024,950 | 4/19/2000 | 12/13/2005 | IC 035: Providing Employment Placement Services For Handicapped… |
|---|---|---|---|---|
| GOODWILL INDUSTRIES | 1,224,492 | 4/1916 | 1/18/1983 | IC 035: Providing Rehabilitation Services For Handicapped And Disadvantaged Persons… |
| GOODWILL and Design | 1,592,248 | 1/20/1967 | 4/17/1990 | IC 035: Providing Employment Placement Services For Handicapped, Disabled… |
| GOODWILL and Design | 0,854,872 | 1/20/1967 | 8/13/1968 | IC 042: Eleemosynary Services – Namely, Training And Rehabilitating Handicapped… |
| GOODWILL INDUSTRIES | 2,811,694 | 1/15/1935 | 2/3/2004 | IC 035: Retail Store Services Featuring A Variety Of Goods Of Others… |
| GOODWILL and Design | 3,052,119 | 6/1/2002 | 1/31/2006 | IC 035: Employment Agency Services, Temporary Employment… |
| GOODWILL CARS TO WORK | 4,230,705 | 7/1/2012 | 10/23/2012 | IC 035: Charitable Services, Namely, Financially Assisting People… |
| POWERED BY GOODWILL and Design | 4,013,545 | 7/1/2010 | 8/16/2011 | IC 035: Charitable Services, Namely, Promoting Public Awareness… |
| GOODWILL OPTICAL | 3,324,659 | 6/15/2006 | 10/30/2007 | IC 035: Retail Stores Featuring Eyeglasses |
| SHOPGOODWILL.COM | 2,735,803 | 8/31/1999 | 7/15/2003 | IC 035: On-Line Trading Services In Which Seller Posts Items To Be Auctioned And Bidding… |
| GOODWILLBOOKS.COM | 2,775,999 | 10/2000 | 10/21/2003 | IC 035: Online Retail Store Services Featuring Books And Periodicals |
| GOODWILLIT | 4,232,267 | 3/31/2011 | 10/30/2012 | IC 035: Retail Store Services Featuring A Wide Variety Of Consumer Goods Of Others. |
| G | 4,037,979 | 3/20/1995 | 10/11/2011 | IC 035: Employment Services For People With Disabilities And Other Disadvantaging |

| | | | | Conditions… |
|---|---|---|---|---|
| GOODWILL | 3,070,744 | 4/1916 | 3/21/2006 | IC 035: Employment Services For Disabled And Disadvantaged Persons… |

10.

These registrations for the GII Marks are valid and in full force and effect. These marks have been continuously used and have never been abandoned. Several of these registrations have become incontestable pursuant to 15 U.S.C. §1065.

11.

Pursuant to 15 U.S.C. § 1115(a), the registration of the GII Marks is *prima facie* evidence of the validity of the marks and of Goodwill's exclusive right to use the GII Marks in connection with the services identified on the registrations. Moreover, under 15 U.S.C. § 1072, the registration of the GII Marks is constructive notice to Defendant of GII's claim of ownership thereof.

12.

The GII Marks are "famous" marks, as that term is used in 15 U.S.C. § 1125(c)(2)(A).

13.

Goodwill Savannah comprises the local Goodwill affiliate for the coastal Georgia service area. GICE and GCE are a member organization of GII and licensees of the GII Marks. In addition to using the GII Marks, Goodwill Savannah has used variants of the GII marks, including, but not limited to GOODWILL OF THE COASTAL EMPIRE AND GOODWILL INDUSTRIES OF THE COASTAL EMPIRE ("GOODWILL SAVANNAH Marks). Goodwill has well-established common law rights in the GOODWILL SAVANNAH Marks. The GOODWILL SAVANNAH Marks and the GII marks are collectively referred to herein as the GOODWILL Marks.

5

14.

GCE provides the Goodwill Services to individuals within the coastal Georgia service area.

15.

Both GII and Goodwill Savannah have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Goodwill brand and the GOODWILL Marks.  As a result, the Goodwill Services are widely recognized and exclusively associated by consumers and the public as being high quality services provided by Goodwill, and the GOODWILL Marks have acquired strong secondary meaning.

16.

Goodwill Savannah uses trucks and other vehicles in connection with its training, donation collection and retail services.  Goodwill Savannah "retires" such vehicles from Goodwill Savannah's fleet service on a schedule determined by Goodwill Savannah.  Goodwill Savannah then sells its "retired vehicles" to third parties or otherwise disposes of them.

**DEFENDANT'S INFRINGING USE OF THE GOODWILL MARKS**

17.

Upon information and belief, Defendant purchased a retired vehicle containing one or more of the GOODWILL Marks, Goodwill Savannah vehicle number GWC9 (the "Rogue Vehicle"), from Goodwill Savannah within the past several years.

18.

It is Goodwill Savannah's standard practice to require purchasers of its retired vehicles to remove completely, at the purchaser's expense, any appearance of the GOODWILL Marks displayed on a retired vehicle at the time of sale.

19.

Defendant did not remove the GOODWILL Marks from the Rogue Vehicle.

20.

Goodwill Savannah became aware that the GOODWILL Marks had not been removed from the Rogue Vehicle because of reports of a Goodwill Savannah truck bearing South Carolina being operated in and around the Savannah, Georgia area, and, later, the same vehicle parked at Defendant's address.

21.

Over a period of time encompassing during the timeframe of Defendant's ownership of the Rogue Vehicle, Goodwill Savannah received numerous reports from Goodwill Savannah employees and customers and others that the Goodwill Savannah truck bearing South Carolina now known to be the Rogue Vehicle was being operated in and around the Savannah, Georgia area.

22.

During that period of time, Goodwill Employee Ms. Brenda Gantt observed an individual matching Defendant's general description operating the Rogue Vehicle outside Savannah, on Highway 21 near exit 109 on Interstate 95. The vehicle observed by Ms. Gantt matches photographs taken of the Rogue Vehicle by Plaintiffs' investigator Mr. Frank Rimsek. Affidavit of B. Gantt attached hereto as Exhibit A ("Gantt Affidavit") at 3, 4 and 12; see Complaint ¶ 31, Attachment 1 to Exhibit D.

23.

Upon observing the Rogue Vehicle in Chatham County, Ms. Gantt's immediate suspicion was that the Rogue Vehicle was being used to collect donated goods intended for Goodwill

7

Savannah and to divert such donated goods away from Goodwill Savannah and to another, unapproved purpose. Gantt Affidavit, Exhibit A at 10.

24.

The location where Ms. Gantt observed the Rogue Vehicle is within a short drive of several Goodwill Savannah donation sites, both manned and unmanned.

25.

Goodwill employee Tony Brown also observed what Plaintiffs believe to be the Rogue Vehicle on the public roads in Georgia. Mr. Brown saw the Rogue Vehicle in Emanuel County, Georgia, between Swainsboro and Oak Park on U.S. 1. The vehicle observed by Mr. Brown matches photographs taken of the Rogue Vehicle by Plaintiffs' investigator Mr. Frank Rimsek. Affidavit of T. Brown attached hereto as Exhibit B ("Brown Affidavit") at 3, 10; see Complaint ¶ 31, Attachment 1 to Exhibit D.

26.

When Mr. Brown observed the Rogue vehicle, he was near the Goodwill location in Swainsboro, Georgia. Ms. Edith Wilson, the employee stationed at that Goodwill location, told Mr. Brown that she had seen the Rogue Vehicle in and around Swainsboro numerous times. Brown Affidavit, Exhibit B at 9.

27.

After Ms. Gantt's encounter with the Rogue Vehicle, Goodwill Savannah continued to receive reports that the Rogue Vehicle's presence on the public roads in and around Savannah, Georgia. Goodwill Savannah was keenly interested in determining the identity of the owner or operator of the Rogue Vehicle, but GCE never received enough information to allow Goodwill

Savannah to connect the Rogue Vehicle to any particular person or location until it was contacted by the Charleston, South Carolina branch of Goodwill.

28.

In 2013, the Charleston, South Carolina branch of Goodwill notified Goodwill Savannah that the Rogue Vehicle was parked at the Defendant's address.

29.

Upon becoming aware of the probable permanent location of the Rogue Vehicle, Goodwill Savannah attempted to contact Defendant to request that the GOODWILL Marks be removed from the Rogue Vehicle.

30.

On October 2, 2013, Goodwill Savannah, through its counsel, sent a letter to the owner of the Rogue Vehicle in care of the occupant of 2200 Forest Lakes Boulevard, Charleston, SC.  A copy of that letter is attached hereto as Exhibit C.  Goodwill Savannah received no response to that letter.

31.

Goodwill Savannah's counsel engaged Mr. Frank Rimsek, a licensed private investigator, to confirm Defendant's identity and that the Rogue Vehicle was, indeed, located at Defendant's address on an ongoing basis. Affidavit of F. Rimsek attached hereto as Exhibit D ("Rimsek Affidavit") at 2, 3 and 4.  Photographs of the Rogue vehicle parked at Defendant's address are attached hereto as Attachment 1 to Exhibit D.

32.

On November 15, 2013, Goodwill Savannah sent a second letter, addressed to Defendant at 2200 Forest Lakes Boulevard, Charleston, SC.  A copy of that letter, which was sent by certified mail, return-receipt requested, is attached hereto as Exhibit E.   The return-receipt showing that

Defendant signed for this letter is attached hereto as Exhibit F.  Goodwill Savannah received no response to that letter.

33.

On February 11, 2014, Goodwill Savannah caused its private investigator to hand-deliver another letter to Defendant.  A copy of that hand-delivered letter is attached hereto as Exhibit G. Goodwill Savannah's investigator delivered the letter to 2200 Forest Lakes Boulevard, Charleston, SC. The Defendant was not at the residence at that time, so Goodwill Savannah's investigator left the Hand-Delivered Letter with an adult female occupant of 2200 Forest Lakes Boulevard, who represented that she would pass the letter on to Defendant. Rimsek Affidavit, Exhibit D at 8, 9.

34.

The Hand-Delivered Letter stated that Goodwill Savannah's investigator would return to Defendant's residence within a week's time to ascertain whether Defendant had complied with Goodwill Savannah's request that the GOODWILL Marks be removed from the Rogue Vehicle. Goodwill Savannah's investigator returned to Defendant's residence on February 19, 2014 and observed that Defendant had not removed the GOODWILL Marks from the Rogue Vehicle. Goodwill Savannah's investigator observed that the GOODWILL Marks, although still plainly visible on the Rogue Vehicle, had been defaced. Rimsek Affidavit, Exhibit D at 10.

35.

Upon information and belief, Defendant received and read the Hand-Delivered Letter. Upon information and belief, Defendant chose not to remove the GOODWILL Marks from the Rogue Vehicle as requested.  Rather, upon information and belief, Defendant chose to "thumb his nose" at Goodwill by using electrical tape to crudely deface the GOODWILL Marks and attempt to change the word "GOODWILL" set in large type on the side of the vehicle to the ostensibly disparaging

10

word "BADWILL."   Photographs of Defendant's defacement of the GOODWILL Marks on the Rogue Vehicle, taken by Goodwill Savannah's investigator, are attached hereto as Attachment 2 to Exhibit D.

36.

Defendant's defacement of the GOODWILL Marks did not obscure the marks or effectively remove the GOODWILL Marks from the Rogue Vehicle.  Rather, the GOODWILL Marks remained visible and obvious as the GOODWILL Marks, albeit defaced, to the casual observer.

37.

At no time was Defendant authorized by Goodwill Savannah or by GII to use the GOODWILL Marks.  At no time was Defendant authorized by Goodwill Savannah or by GII to collect donated goods intended for Goodwill, using the Rogue Vehicle or otherwise.

38.

At no time did Defendant attempt to contact Goodwill Savannah or its attorneys to discuss this matter.  Although each of Goodwill Savannah's letters to Defendant raised concerns that the Rogue Vehicle was being used to divert donated goods intended for Goodwill, Defendant at no time responded to these allegations or offered any denial or explanation.

39.

Upon information and belief, Defendant has also used the Rogue Vehicle to transport his racing motorcycles to public motorcycle race events, implying Goodwill's endorsement or sponsorship of Defendant's racing activities. Rimsek Affidavit, Exhibit D at 9.

11

## COUNT I

## TRADEMARK INFRINGEMENT

40.

Plaintiffs incorporate paragraphs 1 – 39 as if they were fully restated herein.

41.

Plaintiffs have valid and protectable trademark rights in the GOODWILL Marks, as evidenced by the registrations set forth in paragraph 9, above, and through the common law marks referenced in paragraph 13, above.

42.

Defendant has used the GOODWILL Marks in commerce by continuing to drive the Rogue Vehicle without removing the GOODWILL Marks, even after having received several demands from Plaintiffs' counsel to cease and desist using the GOODWILL Marks.

43.

Upon information and belief, based on Ms. Gantt's suspicion that Defendant has used the Rogue Vehicle to divert donated goods intended for Goodwill, and based on Defendant's failure to deny the same in response to multiple letters from Plaintiffs' counsel (which Plaintiffs posit that a reasonable person would deny if untrue), Defendant has used the GOODWILL Marks in commerce by using the Rogue Vehicle displaying the GOODWILL Marks, in imitation of the Goodwill Services.

44.

Defendant has used the GOODWILL Marks in commerce by using the Rogue Vehicle displaying GOODWILL Marks to transport Defendant's motorcycles to public races.

45.

Defendant's use of the GOODWILL Marks was, at all times, without authorization from GII, Goodwill Savannah or any other entity that had the right to authorize such use.

46.

Defendant's previous and continuing display of the GOODWILL Marks on the Rogue Vehicle is likely to cause confusion, to cause mistake or to deceive the public by (a) confusing the public into associating the actions of Defendant with Goodwill, (b) deceiving the public into believing that Defendant is providing the Goodwill Services; and (c) causing the public to be mistaken or confused into believing that Goodwill is sponsoring or endorsing his motorcycle racing activities at public events.

47.

Defendant's use of the GOODWILL Marks on the Rogue Vehicle in imitation of the Goodwill Services, as set forth in Paragraph 43, above, constitutes the use of a counterfeit mark under 15 U.S.C. §§ 1116(d) and 1117(c) in connection with the distribution of services.

48.

By virtue of the foregoing, Defendant is liable for Trademark Infringement.

49.

By virtue of the foregoing, Plaintiffs are entitled to statutory damages, actual damages, or an award of Defendant's profits as allowed by law.

50.

By virtue of the foregoing, Plaintiffs are entitled to injunctive relief as allowed by law.

13

51.

By virtue of the foregoing, Plaintiffs are entitled to an award of costs and their attorneys' fees as allowed by law.

## COUNT II

## DECEPTIVE TRADE PRACTICES

52.

Plaintiffs incorporate paragraphs 1 – 51 as if they were fully restated herein.

53.

Defendant's use of the Rogue Vehicle displaying the GOODWILL Marks in the manner previously described constitutes the passing off of Defendant's activities as the services of Goodwill.

54.

Defendant's use of the Rogue Vehicle displaying the GOODWILL Marks in the manner previously described has caused and will continue to cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Defendant's activities, including his goods and/or services.

55.

Defendant's use of the Rogue Vehicle displaying the GOODWILL Marks in the manner previously described has caused and will continue to cause likelihood of confusion or of misunderstanding as to Defendant's affiliation, connection, or association with or certification by Goodwill because his actions have caused and will cause the public to mistakenly assume that Defendant's activities are affiliated, connected or associated with, or certified by, Goodwill.

56.

By virtue of the foregoing, Defendant is liable for Deceptive Trade Practices.

57.

By virtue of the foregoing, Plaintiffs are entitled to injunctive relief as allowed by law.

58.

By virtue of the foregoing, Plaintiffs are entitled to an award of costs and their attorneys' fees as allowed by law.

## COUNT III

## PUNITIVE DAMAGES

59.

Plaintiffs incorporate paragraphs 1 – 58 as if they were fully restated herein.

60.

Defendant's actions in this matter, namely his complete failure to respond to numerous attempts to discuss Plaintiffs' concerns about Defendant's use of the GOODWILL Marks and the Rogue Vehicle, his utter lack of concern for the allegations that he is using the Rogue Vehicle to wrongfully divert donations intended for Goodwill, and his stick-in-the-eye "response" to the Hand-Delivered Letter by defacing the GOODWILL Marks on the Rogue Vehicle, amount to willful misconduct, malice, fraud, wantonness, and that entire want of care that raises the presumption of conscious indifference to consequences.

61.

By virtue of the foregoing, Defendant is liable for and Plaintiffs are entitled to Punitive Damages.

## COUNT IV

## TEMPORARY RESTRAINING ORDER

### 62.

Plaintiffs incorporate paragraphs 1 – 61 as if they were fully restated herein.

### 63.

Plaintiffs seek to enjoin Defendant from continuing to display the GOODWILL Marks on the Rogue Vehicle.  Plaintiffs would request that Defendant be required to either cover the GOODWILL Marks on the Rogue Vehicle such that the GOODWILL Marks are not identifiable or visible by the public or confine the Rogue Vehicle within a garage and off the public streets until the merits of this matter are finally decided by this Court.

### 64.

Plaintiffs are likely to succeed on the merits of the grounds set forth in paragraphs 1 – 61 herein.

### 65.

Plaintiffs are subject to immediate and irreparable harm by Defendant's refusal to remove the GOODWILLL Marks from the Rogue Vehicle.  The actions that Defendant takes under the GOODWILL Marks without Plaintiffs' authorization cannot be undone.  The harm to GOODWILL's brand and reputation caused by the association of the GOODWILL Marks with Mr. Woodworth's actions is immediate, permanent and irreparable.

### 66.

The continued damage to GOODWILL's brand and reputation that will occur if Defendant is not temporarily restrained far outweighs the nominal cost that Defendant would incur to temporarily cover the GOODWILL Marks on the Rogue Vehicle.

67.

By virtue of the foregoing, and in accordance with Federal Rule of Civil Procedure 65(b), Defendant should be temporarily and immediately enjoined from continuing to display the GOODWILL Marks on the Rogue Vehicle.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment against Defendant as follows:

A.      Finding that Defendant is liable for trademark infringement, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

B.      Granting temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure immediately and temporarily restraining and enjoining Defendant from displaying the GOODWILL Marks on the Rogue Vehicle;

C.      Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. §1116, and O.C.G.A. § 10-1-373, preliminarily and permanently restraining and enjoining Defendant from using the GOODWILL Marks in any manner or displaying the GOODWILL Marks on the Rogue Vehicle;

D.      Requiring Defendant to file with this Court and serve on Plaintiffs within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

E.      Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any activities of Defendant

at issue in this action have been authorized by Goodwill, or are related in any way with Goodwill and/or the Goodwill Services;

      F.    Awarding Plaintiffs statutory damages of $2,000,000.00 per counterfeit mark per type of infringing service in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117) or alternatively, ordering Defendant to account to and pay to Plaintiffs all profits realized by Defendants wrongful acts and/or also awarding Plaintiffs their actual damages, and also directing that such profits and/or actual damages be trebled, in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117);

      G.    Awarding Plaintiffs actual and punitive damages to which they are entitled under applicable federal and state laws, including under O.C.G.A § 51-12-5.1;

      H.    Awarding Plaintiffs their costs, attorneys' fees, investigatory fees, and expenses to the full extent provided by Section 35 of the Lanham Act (15 U.S.C. § 1117) and O.C.G.A. § 10-1-373;

      I.    Awarding Plaintiffs pre-judgment interest on any monetary award made part of the judgment against Defendant; and

      J.    Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury in this matter.

18

RESPECTFULLY SUBMITTED this 15th Day of July, 2014.

                           BOUHAN FALLIGANT LLP


                  By:    /s/BENJAMIN W. KARPF___
                         BENJAMIN W. KARPF
                         Georgia Bar No. 310430


                         /s/JOHN B. MANLY_____
                         JOHN B. MANLY
                         Georgia Bar No. 194011
                         *Attorneys for Plaintiffs*

BOUHAN FALLIGANT LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, GA 31402
Telephone:  912-232-7000
Facsimile:  912-233-0811
bwkarpf@bouhan.com
jbmanly@bouhan.com

STATE OF GEORGIA          )
                          )
COUNTY OF CHATHAM         )

### VERIFICATION

Personally appeared before me, an officer duly authorized to administer oaths, **CONI CURTAS, VICE PRESIDENT OF DONATED GOODS, GOODWILL OF THE COASTAL EMPIRE, INC.,** who after first being duly sworn, deposes and says that she has read the *Complaint,* and it is true to the best of her knowledge, information and belief.

Dated this _8_ day of July, 2014.

**CONI CURTAS**
**VICE PRESIDENT OF DONATED GOODS**
**GOODWILL OF THE COASTAL EMPIRE, INC.**

Sworn to and subscribed before me
this _8a_ day of July, 2014.

Notary Public

SUE HARTLOGE
My Commission Expires Nov. 3, 2015